AF Approval __JMH__                    Chief Approval __MPF__

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-161-PGB-DCI

DAMARRIS JEAN SAINT-JUSTE

## **PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, Damarris Jean Saint-Juste and the attorney for the

defendant, Andrew Chmelir, Esq., mutually agree as follows:

### A.    **Particularized Terms**

1.    Counts Pleading To

The defendant shall enter pleas of guilty to Counts One through

Four of the Indictment. Counts One and Three charge the defendant with

interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a)

and (b). Counts Two and Four charge the defendant with using, carrying, and

brandishing a firearm during and in relation to a crime of violence, in

violation of 18 U.S.C. § 924(c)(1)(A)(ii).

Defendant's Initials DSJ

2.    Minimum and Maximum Penalties

Counts One and Three carry a maximum sentence of 20 years imprisonment, a fine of up to $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100 per count.

Counts Two and Four carry a mandatory minimum term of imprisonment of 7 years up to life, consecutive to each other and to any other term of imprisonment of imprisonment imposed on Counts One and Three, a fine of up to $250,000, a term of supervised release of not more than 5 years, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    *Alleyne v. United States and Apprendi v. New Jersey*

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of 7 years' imprisonment and a maximum sentence of Life as to Counts Two and Four because the following facts have been admitted by the defendant and are established by this plea of guilty:

> The defendant brandished, or aided and abetted the brandishing of a firearm during and in relation to a crime of violence.

Defendant's Initials  DSJ                 2

4.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Counts One and Three are:

First:    The defendant knowingly acquired someone else's property;

Second:    The defendant took the property against the victim's will, by using actual or threatened force, or violence, or causing the victim to fear harm, either immediately or in the future; and

Third:    The defendant's actions obstructed, delayed, or affected interstate commerce.

The elements of Counts Two and Four are:

First:    The defendant committed the crime of violence charged in Count One and Three of the Indictment; and

Second:    That during and in relation to the crime of violence, the defendant knowingly used, carried, and brandished a firearm.

The defendant is charged in each count with aiding and abetting, in violation of 18 U.S.C. § 2. A defendant "aids and abets" a person if the defendant intentionally joins with the person to commit a crime. A defendant is criminally responsible for the acts of another person if the defendant aids and abets the other person.

Defendant's Initials  DSJ              3

5.   <u>Counts Dismissed</u>

At the time of sentencing, the remaining count against the defendant, Counts Five and Six of the Indictment, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

7.   <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials DSJ       5

9.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 924(d) and 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The property to be forfeited includes, but is not limited to a miscellaneous ammunition found within a magazine, seized from the residence located at 1468 Mercy Drive, Apartment 126, Orlando, Florida, on September 6, 2022, and which is property involved in the commission of Counts Two and Four.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

Defendant's Initials D S J              6

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete

Defendant's Initials DJJ                    7

information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant

up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

Defendant's Initials DSS          9

10. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to victims, both the businesses and the individual tellers or employees, specifically the 7-Eleven located at 1439 West Orange Blossom Trail, Apopka, Florida, and the 7-Eleven located at 1117 East Semoran Boulevard in Orange County, Florida.

11. Restitution to Persons Other Than the Victim of the Offense of Conviction - Agreed Upon Amount

Pursuant to 18 U.S.C. §§ 3663(a)(3) and/or 3663A(a)(3), defendant agrees to make restitution to other victims of offenses that were either dismissed or not charged in this indictment, both the businesses and the individual tellers or employees. Specifically, defendant agrees to make restitution to the victims from the following offenses:

    a. **TL Towing**, located at 605 Ferguson Drive, Orlando, Florida, for the robbery on August 26, 2022 (not charged);

    b. **Circle K**, located at 2202 West McCormick Road, in Orange County, Florida, for the robbery on August 30, 2022 (Count Five, dismissed);

    c. **7-Eleven**, located at 5492 International Drive, Orlando, Florida, for the robbery on August 31, 2022 (not charged);

    d. **Rebel Gas**, located at 2294 East Irlo Bronson Memorial Highway, Kissimmee, Florida, for the robbery on September 11, 2022 (not charged);

      e. **7-Eleven**, located at 901 E. Vine Street, Kissimmee, Florida, for the robbery on September 11, 2022 (not charged);

      f. **Speedway**, located at 27345 US Hwy 27, Leesburg, Florida, for the robbery on September 14, 2022 (not charged).

## B.    **Standard Terms and Conditions**

    1.    <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment of $100.00 pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials DSS    12

4.     Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office

to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

     5.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

6. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

7. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials DSS                    15

8.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

9.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the

attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

10.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

11.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea

and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

12. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __12__ day of June, 2023.

ROGER B. HANDBERG
United States Attorney

_____
DAMARRIS JEAN SAINT-JUSTE
Defendant

_____
Ranganath Manthripragada
Assistant United States Attorney

_____
Andrew J. Chmelir, Esq.
Attorney for Defendant

_____
Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials __DSJ__                    18

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-161-PGB-DCI

DAMARRIS JEAN SAINT-JUSTE

## PERSONALIZATION OF ELEMENTS

**As to Counts One and Three:**

1.     On or about August 26th and 30th, 2022, in the Middle District of Florida, did you, while being aided and abetted your co-defendants, knowingly and unlawfully take personal property consisting of United States currency belonging to the 7-Eleven convenience stores in Apopka and Orlando, Florida?

2.     Was the property taken against the will of the 7-Eleven employee, by using actual or threatened force, using violence, or causing the victim to fear harm, either immediately or in the future?

3.     Did your actions and your co-defendants' actions obstruct, delay, or affect interstate commerce?

**As to Count Two and Four:**

1.     On or about August 26th and 30th, 2022, did you commit, and aid and abet the commission of, the violent crimes charged in Counts One and Three of the Indictment, that is, robbery of 7-Eleven in violation of 18 U.S.C. § 1951(a) and (b)?

2.     During and in relation to the robbery of the 7-Eleven stores, did you knowingly brandish a firearm, as charged in the Indictment?

Defendant's Initials ⟋⟍⟍                    19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-161-PGB-DCI

DAMARRIS JEAN SAINT-JUSTE

## FACTUAL BASIS

The defendant, Damarris Jean Saint-Juste (SAINT-JUSTE), while

aiding and abetting others, committed eight commercial robberies of

businesses located in central Florida between August 26, 2022, and September

14, 2022. In each of the eight robberies, SAINT-JUSTE was armed with and

brandished a firearm.

### Robbery #1 – 8/26/22

The first robbery occurred on August 26, 2022, at approximately 3:21

a.m., at TL Towing located at 605 Ferguson Drive, Orlando, Florida. TL

Towing provides towing services to various businesses in the Orlando area. At

the time of the robbery, multiple vehicles were being held at the property,

including vehicles with out-of-state registrations such as New York, Illinois,

and Pennsylvania.

The victim of the robbery (R.R.) was working as a driver for TL

Towing. As R.R. exited his tow truck and walked to the gate to close it, he

Defendant's Initials D.S.J.          20

was approached by two black males armed with guns, later identified as

SAINT-JUSTE and Marcus Terrell Ellington, Jr. (Ellington).



R.R. tried to flee on foot but was chased by SAINT-JUSTE and

Ellington. A participant struck R.R. in the chest with the muzzle of a rifle.

SAINT-JUSTE possessed a Draco-style firearm that was visible in various

points of the surveillance video:



SAINT-JUSTE and Ellington were assisted by two other robbers, one

of whom entered the office and stole a cash box containing $3,000.



## Robbery #2 – 8/26/22 (Counts One and Two)

The second robbery occurred less than an hour later, on August 26, 2022, at approximately 4:05 a.m. at 7-Eleven located at 1439 West Orange Blossom Trail, Apopka, Florida. The store manager, S.M., reported that his employee was robbed at gunpoint by three black males. The robbers stole approximately $200, an iPhone, and tobacco products. The business provided surveillance video images of the suspects who committed this robbery. The videos establish that it was three of the four males observed from the TL Towing robbery described above, including Ellington and SAINT-JUSTE:



During the course of this robbery, SAINT-JUSTE and Ellington both brandished the same firearms they possessed in the TL Towing robbery.

Defendant's Initials D S J          23

**Robbery #3 – 8/30/22 (Counts Three and Four)**

The third robbery occurred on August 30, 2022, at 4:06 a.m. at a 7-Eleven convenience store located at 1117 East Semoran Boulevard, in Orlando, Florida. The victim who reported the robbery (M.R.) was a cashier who worked at the 7-Eleven. The robbery was captured on surveillance video, which was later collected as evidence. SAINT JUSTE and two accomplices, later identified as Ellington and Rodreakas Deshay Smith, Jr. (Smith), entered the store wearing hooded sweatshirts and/or masks to conceal their identity.



*SAINT-JUSTE*          *Smith*          *Ellington*

Defendant's Initials _DSJ_          24

All three robbers brandished firearms during this robbery. SAINT-JUSTE forced M.R. at gunpoint behind the counter and instructed him to take a shopping bag and empty the registers into the bag. M.R., having been placed in fear for his life, followed the directions and placed approximately $270 from two registers into the bag. The victim was then ordered to lie face down on the floor and he complied.

### Robbery #4 – 8/30/22 (Counts Five and Six)

The fourth robbery occurred on August 30, 2022, at approximately 5:28 a.m., at a Circle K convenience store located at 2202 West McCormick Road, in Apopka, Florida. The victim who reported the robbery to 911 (N.L.) was a cashier who worked at the Circle K. The robbery was captured on surveillance video, which was later collected as evidence. SAINT-JUSTE, Ellington, and Smith entered the store wearing similar clothing as the third robbery described above, which occurred 82 minutes earlier.

N.L. reported that firearms were pointed at him by the robbers and demands were made for money. Having been placed in fear for his life, the victim complied with the robbers. They stole $70-$90 in currency from the cash register, several tobacco products, and a roll of $50 Florida lottery tickets. The robbers attempted, but were unsuccessful, in their attempt to enter the store's safe.

Images from the surveillance images are depicted below. Some of the clothing items have been swapped between the robbers in an effort to disguise themselves.



Between 6:38 a.m. and 7:13 a.m., immediately after the Circle K robbery, $1,100 in prize money was redeemed at three different stores in the Orlando area. The information regarding the redemption of the stolen lottery tickets was provided to law enforcement by The Florida Department of the Lottery ("Florida Lottery"). Florida Lottery also provided information about the stolen tickets being scanned prior to their redemption. Florida Lottery

offers a cell phone application that allows customers to check a scratch-off ticket by scanning the bar code to see if the ticket is a winner.

On August 30, 2022, between 6:00 a.m. and 6:16 a.m., the stolen lottery tickets were scanned from a cell phone device utilizing a specific IP address maintained by Spectrum Internet. That IP address resolved back to a residence at 1468 Mercy Drive, Apartment 126, in Orlando. This address (located 10.5 miles from the robbery on W. McCormick Road) is where Ellington lives with his girlfriend, and is part of a housing complex where Ellington, SAINT-JUSTE and Smith are known by law enforcement to congregate.

Law enforcement retrieved video from all three stores where the stolen lottery tickets were cashed. At each of the locations, Smith and SAINT-JUSTE cash in the stolen lottery scratch-off tickets. The videos show SAINT-JUSTE wearing the same clothing he wore during the robberies:



**Robbery #5 – 8/31/22**

The fifth robbery occurred on August 31, 2022, at 4:46 a.m., at a 7-Eleven located at 5492 International Drive, Orlando, Florida. The other victim clerk, M.O., stated that when the four men entered the store, they brandished firearms and demanded money. The victim complied and then stood back as the subjects took money from the registers and scratch-off lottery tickets. Surveillance video depicts three of the four robbers below:

 

 

*Above left*: SAINT-JUSTE

*Above right*: uncharged codefendant

*Left*: Ellington

*(the fourth robber is a juvenile who was charged and adjudicated in State Court with this offense)*

Defendant's Initials D S J        28

One of the other clerks, W.B., ran out the back door when she saw the four armed males enter the store. SAINT-JUSTE chased her outside of the store through the rear entrance, ordered her down to the pavement, then re-entered the store to participate in the robbery.

Approximately 20 minutes after the robbery, the stolen lottery tickets from Robbery #5 were scanned to check whether they were winners. The Florida Lottery reports that the scan initiated from the same IP address at Ellington's residence, 1468 Mercy Drive, Apartment 126. Later that day, at approximately 5:28 p.m., Ellington attempted to cash one of the stolen lottery tickets at a 7-Eleven store located on Lake Underhill Road in Orlando. Ellington was wearing the same "Joker" hoody that was used in prior robberies:



## Search of Ellington's Apartment – 9/6/22

On September 6, 2022, law enforcement conducted a search at 1468 Mercy Drive, Apartment 126, in Orlando. They recovered a pair of shoes that match the style worn by Ellington in the robberies. They also recovered a magazine clip, loaded with ammunition, consistent with one used for a Draco-style rifle by SAINT-JUSTE in the robberies.

## Robbery #6 – 9/11/22

The sixth robbery occurred on September 11, 2022, at 2:31 a.m., at the Rebel Gas station located at 2294 East Irlo Bronson Memorial Highway in Kissimmee, Florida. The victim clerk, B.X.S., told the responding deputies that he was robbed by two black males, who were carrying a black and brown colored firearm which they pointed to his neck. The two males, identified as SAINT-JUSTE and Ellington, demanded all of the money in the registers and the rolls of scratch-off tickets. The victim dropped approximately $800 - $1,000 from the register onto the floor and observed the robbers placing the money into a black and red colored duffle bag. The victim refused to give the individuals the scratch-off tickets and suggested to them it was worthless. The robbers then took the money and fled.



Fourteen minutes later, SAINT-JUSTE and Ellington committed another armed robbery.

## Robbery #7 – 9/11/22

The seventh robbery occurred on September 11, 2022, at 2:45 a.m., at the 7-Eleven located at 901 E. Vine Street in Kissimmee, Florida. Officers responded and spoke with the victim teller, J.G., who stated he was cleaning the grill when two black males walked into the store. The first male (Ellington) stood by the door and was wearing a grey hoodie. The second male (SAINT-JUSTE) had a long gun and walked him to the register. The victim dropped to his knees, but the robber told him to get the money out of the register. The victim grabbed a plastic bag and started putting money in the bag while

Defendant's Initials _DSJ_       31

SAINT-JUSTE had the long gun pointed at him telling him to get the money out of the safe. The victim advised he did not have access to the safe but pressed a button to the safe and a roll of money came out. SAINT-JUSTE and Ellington fled with $85 of stolen cash.



**Robbery #8 – 9/14/22**

The eighth robbery occurred on September 14, 2022, at 3:15 a.m., at a Speedway convenience store located at 27345 US Hwy 27 in Leesburg, Florida. The victim clerk, T.S., reported that two black males, later identified as SAINT-JUSTE and Ellington, entered the store and robbed her at gunpoint with an AK style firearm. The victim stated that one of the robbers (SAINT-JUSTE) held a firearm at her, demanding to empty the cash register ($200), 70 lottery tickets off the top row, cigar wraps, and approximately 50 packs of

Defendant's Initials _DSJ_

Newport cigarettes. Both subjects also went behind the counter and accessed a closed drawer that contained cigarette packs in them.

Three hours after Robbery #8, the stolen lottery tickets were redeemed at three stores in the Colonial Drive area of Orlando. The surveillance images from the redemption show SAINT-JUSTE and Ellington at the stores. Additionally, after the redemption, SAINT-JUSTE posed a photo of himself on Instagram holding U.S. currency and wearing the same shorts from the redemption.

 

The FBI and local law enforcement had been conducting surveillance on Ellington's apartment over several days prior to and after this robbery. On the day of Robbery #8, after SAINT-JUSTE and Ellington cashed in the

stolen lottery tickets, a covertly installed pole camera captured SAINT-JUSTE walking away from Ellington's apartment. In the image, SAINT-JUSTE is wearing the same clothing he wore earlier when he redeemed the tickets.



On September 16, 2022, the FBI executed a search warrant at Ellington's apartment. By this time, SAINT-JUSTE and Ellington fled the jurisdiction and were later apprehended together in North Carolina on December 20, 2022.

**Interstate Commerce**

At the time of each of these offenses, the convenience stores were businesses whose activities affected interstate commerce by, among other things, buying and selling goods that traveled in interstate commerce. As a result of these robberies, each of these stores were temporarily closed while law enforcement conducted their investigations.